UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BEKKI COUNTRYMAN,

       Plaintiff,

  v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

       Defendant.

CASE NO. C17-1714-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff Bekki Countryman proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REMANDED for an award of benefits.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1985.[1] She did not complete high school or obtain a GED, and previously worked as a barista, shift manager, sales promotion representative, and food sales

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

clerk. (AR 22, 36, 107-08, 420.)

Plaintiff filed SSI and DIB applications in March 2013, alleging disability beginning December 31, 2011. (AR 361-70.) Her date last insured (DLI) for purposes of receiving DIB is December 31, 2017. (AR 17.) The applications were denied initially and on reconsideration.

On April 17, 2014, ALJ Wayne Araki held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 32-58.) At hearing, plaintiff amended her alleged onset date to February 11, 2013, a date consistent with when she stopped working. (AR 34.) On August 15, 2014, the ALJ issued a decision finding plaintiff not disabled. (AR 198-209.)

Plaintiff timely appealed. The Appeals Council granted the request for review, identifying a number of different issues requiring resolution. (AR 216-18.) On July 19, 2016, the ALJ held another hearing, taking additional testimony from plaintiff and a VE. (AR 59-140.) In a decision dated March 6, 2017, the ALJ again found plaintiff not disabled. (AR 15-24.)[2]

The Appeals Council denied plaintiff's request for review on September 21, 2017 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not

---

[2] Although acknowledging the amended onset date in the initial decision (AR 204), both decisions found plaintiff not disabled as of the original alleged onset date (AR 16, 24, 198, 209).

ORDER
PAGE - 2

engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's ventricular pilocytic astrocytoma, with residual symptoms of headaches and nausea, and cognitive disorder. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work, but with no restrictions in sitting, standing, or walking; able to occasionally climb stairs and ramps, stoop, and crawl; unable to climb ladders, ropes, or scaffolds; able to frequently balance; and unable to tolerate more than occasional exposure to vibrations or hazards, to operate heavy equipment, or work at unprotected heights. Plaintiff can remember, understand, and carry out instructions for tasks generally required by occupations with an SVP of 1-2, and adjust to workplace changes generally associated with occupations with an SVP of 1-2. With that assessment, the ALJ found plaintiff able to perform her past relevant work as a barista.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ also found plaintiff capable of performing other jobs, such as work as a maid, fast food worker, and café attendant.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d

1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

In her opening brief, plaintiff argued the ALJ erred in rejecting the opinions of primary care physician Mark Holland, M.D., treating neurosurgeons Daniel Clayton, M.D. and Justin Santarelli, M.D., and examining psychologist Brendon Scholtz, Ph.D.; in finding her impairments did not meet or equal Listing 13.02A (cancer of head and neck); in assessing her symptom testimony and applying proper standards to the evaluation of that testimony and her mother's lay statement; and in finding she could perform work as a barista or other full time work. She requested the improperly rejected medical opinions and testimony be credited as true and this matter remanded for an award of benefits.

The Commissioner denies plaintiff's impairments meet the requirements of Listing 13.02, but concedes harmful error at step three given the ALJ's failure to evaluate plaintiff's grade I pilocytic astrocytoma under Listing 11.05 (benign brain tumor). The Commissioner also concedes error in the failure to identify or address plaintiff's complaints regarding fatigue and residual headaches, but maintains a remand for further administrative proceedings is the proper remedy because the record as a whole leaves serious doubt as to whether plaintiff is disabled. The Commissioner asserts that, on remand, the ALJ should reevaluate step three and the reliability of plaintiff's reported symptoms and limitations, specifically address an April 2014 declaration from

Dr. Holland, and obtain evidence from a medical expert to clarify the nature, severity, and functional limitations of plaintiff's physical impairments. The ALJ may also, as a result of taking those steps, need to reevaluate the medical opinion evidence, RFC, and other steps in the sequential evaluation. The Commissioner states a new ALJ should be assigned to the third hearing of plaintiff's claim.

In reply, plaintiff withdrew her step three assignment of error, but renewed her request for reversal and an award of benefits based on the other errors alleged. Plaintiff acknowledges that, if benefits are awarded, the Social Security Administration (SSA) may initiate a Continuing Disability Review to ascertain whether or not her disability has continued.

## Reversible Errors

There is no dispute the ALJ harmfully erred in assessing plaintiff's brainstem tumor at step three, in evaluating at least some of her testimony as to symptoms resulting from that tumor, and in relation to at least one of the medical opinions of record. The Commissioner does not directly address plaintiff's other assignments of error. However, in asserting the need to obtain evidence from a medical expert, the Commissioner appears to concede further error in the consideration of the medical evidence. As addressed below, the Court finds the ALJ's errors extend beyond those specifically conceded by the Commissioner.

In the July 2016 hearing, plaintiff testified her condition had not changed since the prior hearing, that her tumor had been stable, but scar tissue continued to develop and cause issues, and that her ongoing symptoms included chronic nausea, pain, anxiety, migraines, numbness, and lack of appetite. (AR 64, 72, 113.) Her nausea made her feel like she is car sick all the time and, due to the location of her tumor and the shunt used to drain fluid and reduce swelling, she had vomiting spells about three times a week, lasting for some six hours at a time, following coughing or

sneezing fits or changes in the weather or air pressure. (AR 114-15.) Plaintiff testified she would be absent at least five times a month if she tried to work and that her "headaches put her in bed three times a month." (AR 117-18.) She attributed her headaches to the scar tissue and pressure in her head, and stated she had had three additional brain surgeries since the prior hearing. (AR 118, 120.)

The ALJ failed to adequately address plaintiff's symptom testimony as a whole, not only her complaints regarding fatigue and residual headaches. The Appeals Council directed the ALJ to further evaluate plaintiff's subjective complaints and provide appropriate rationale pertaining to the evaluation of symptoms. (AR 218.) In the second decision, the ALJ stated that, because plaintiff testified her condition had not changed, the discussion of her symptom testimony in the prior decision remained an accurate evaluation of her symptoms. (AR 21.) As reflected above, plaintiff did not merely testify that her symptoms had not changed. The ALJ here erred in failing to reassess plaintiff's symptom testimony as directed by the Appeals Council.

The ALJ also erred in his assessment of the medical evidence. The ALJ determined the evidence received since the prior decision reflected plaintiff's condition had remained stable and her symptoms had improved. He found her complaints regarding her persistent symptoms not fully consistent with the medical evidence. However, as set forth below, the ALJ provided a selective and incomplete discussion of the medical evidence.

The ALJ stated that, in August 2014, plaintiff presented with mild to moderate cognitive linguistic deficits, but was expected to make a good recovery so long as medically stable. (AR 21.) The ALJ did not mention that the deficits found included "word finding difficulties" and "short term memory and visual perception deficits that negatively impact her ability to live independently, drive safely and return to work[,]" that plaintiff was advised not to drive, and was

noted to require others to manage her finances and take care of her children. (AR 813.) The ALJ described a September 2014 report of only occasional shooting pain along the right side of her head and no other neurological complaints, but not her October 2014 report of progressively worsening headaches or her report in early January 2015 of a pounding headache lasting several days. (AR 21, 820-22.) The ALJ acknowledged another early January 2015 report in which plaintiff was seen after several days of headaches and vomiting, but had a negative workup, was neurologically intact, alert and oriented, and did not appear to be in any pain. (AR 21, 823.) The ALJ also described a later January 2015 record as showing good concentration and speech, a benign, stable tumor on MRI, and no acute concerns, while omitting her report of several weeks of severe headaches and nausea and, following a resetting of her shunt the week prior, continued episodes of headache, nausea, and ringing in her ears. (AR 21, 825.)

The ALJ focused on positive aspects of records from June and July 2015, including plaintiff's report of stable, intermittent, and occasional symptoms, sometimes absent for long intervals, while not mentioning she reported continued sharp headaches, coughing, emesis (vomiting), and "general unwellness[,]" and that both plaintiff and her mother were observed to be "tearful about her unexplained and unresolved symptoms." (AR 21, 821, 826-27.) Nor did the ALJ mention treatment notes from other providers, including a June 2015 report that plaintiff "will be fine for several weeks but then have 1-2 weeks of recurrent nausea and vomiting, or a July 2015 report of deterioration over the last several months in terms of poor appetite, recurrent nausea, weight loss, dizziness, and extreme fatigue, weight loss of twelve pounds in twelve days, and two emergency room trips in five weeks for severe headaches. (AR 857, 861.)

The ALJ accurately noted improvement in October 2015 and January 2016, including plaintiff's report on the latter date that her nausea and vomiting had completely resolved. (AR 21,

853-54, 849-50.) However, plaintiff also reported worsening headaches in February 2016. (AR 828.) While acknowledging that report, the ALJ observed plaintiff had discontinued her medication. (AR 21, 828.) Yet, the report showed plaintiff had discontinued her use of Zofran and medicinal marijuana, medication she used solely, or at least primarily, to treat nausea. (*See* AR 65-70, 828.) Moreover, in the same February 2016 report, Dr. Santarelli stated: "Because of chronic severe headaches and nausea, and because of the burden of previous operations in the posterior fossa, I continue to maintain [that] this patient qualifies as disabled. I think she merits that qualification for an additional 12 months." (AR 828.)

Considering the medical record as a whole and the ALJ's selective and incomplete depiction of the record, the Court finds an absence of substantial evidence support for the ALJ's conclusion. This error extends beyond the consideration of plaintiff's testimony. Following the first ALJ decision, Dr. Holland, Dr. Clayton, and Dr. Santarelli provided additional medical opinions attesting to plaintiff's disability due to her tumor and related symptoms. (AR 815 (Dr. Santarelli, August 29, 2014: stating plaintiff's symptoms had been modestly improved, but she continued to have chronic fatigue, nausea, anorexia, some tremors, and headaches, she needs ongoing OT/PT/speech therapy, and her mother remains a significant caregiver for her and handles most of the care of her three children; opining the ALJ had "significantly underestimated the severity" of plaintiff's condition and stating: "I absolutely believe that she has been disabled from ANY gainful employment from December 31, 2011 to present time and for the foreseeable future.") (emphasis in original); AR 816 (Dr. Clayton, September 18, 2014: explaining the location of the tumor causes diplopia (double vision), nausea/vomiting, and headaches, that the symptoms may be lessened with medication, but would not likely completely resolve, and that plaintiff's central apnea breathing problem and lability of her heartrate are not likely curable due

to the continued presence of the tumor); AR 817 (Dr. Santarelli, February 29, 2016: "Because of chronic severe headaches and nausea, and because of the burden of previous operations in the posteria fossa, I continue to maintain that this patient qualifies as disabled. I think she merits that qualification for an additional twelve months."); AR 828 (stating same on February 1, 2016); and AR 872 (Dr. Holland, June 7, 2016: opining plaintiff is not capable of performing any type of work on a reasonably continuous, sustained basis due to fibromyalgia causing chronic fatigue, unresectable brain tumor causing recurrent headaches, dizziness, constant nausea/vomiting, heavy painful menses, and anxiety).) The ALJ relied on the same selective and incomplete depiction of the medical record in assigning little weight to these medical opinions (AR 22) and, as such, erred in his rejection of this medical opinion evidence.

The ALJ also erred in considering the opinions of Dr. Scholtz. The ALJ previously assigned this opinion evidence limited weight upon finding it internally inconsistent and inconsistent with plaintiff's self-reported activities. (AR 206.) The Appeals Council rejected the finding of internal inconsistency, noting the Global Assessment of Functioning (GAF) score of 60 assigned by Dr. Scholtz reflected moderate, not mild limitations and was consistent with Dr. Scholtz's conclusions. (AR 217.) The Appeals Council directed the ALJ to give further consideration and explain the weight afforded to the opinions of Dr. Scholtz. (*Id*. (citing Exhibit 11F (AR 667-72).) In the second decision, the ALJ accurately depicted and properly addressed the GAF score (AR 22), but did not mention or reassess the opinions of Dr. Scholtz, stating only that the discussion of the opinions in the prior decision remained an accurate assessment of plaintiff's functioning (AR 21, n.1). However, because there was no internal inconsistency and the ALJ did not reassess plaintiff's symptom testimony or the opinions of Dr. Scholtz as directed, the ALJ again erred in relation to this opinion evidence.

Although the Appeals Council did not find error or direct consideration of the third-party statement from plaintiff's mother (*see* AR 216-18 and 476-77), the ALJ had previously rejected the lay testimony based, in part, on finding it did not comport with plaintiff's daily activities. (AR 207.) The ALJ's failure to properly address the symptom testimony arguably implicates the consideration of the lay testimony. Nor is it clear whether the ALJ considered additional statements from plaintiff's mother contained in a letter dated August 23, 2015. (AR 317-18.)

Finally, as the Commissioner concedes, the ALJ's errors implicate the remainder of the sequential evaluation, including plaintiff's RFC and the conclusions at steps four and five. The ALJ's multiple errors necessitate remand.

## Remand

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). However, a remand for an immediate award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). *Accord Leon v. Berryhill*, No. 15-15277, 2017 U.S. App. LEXIS 22330 at *3, 874 F.3d 1130, ___ (9th Cir. Nov. 7, 2017) ("An automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule.")

Before remanding a case for an award of benefits, three requirements must be met. First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must conclude "'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" *Id.*

In so doing, the Court considers the existence of "'outstanding issues'" that must be resolved before a disability determination can be made. *Id*. (quoting *Treichler*, 775 F.3d at 1105). Third, the Court must conclude that, "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Id*. (quoting *Garrison*, 759 F.3d at 1021).[3] *See also Treichler*, 775 F.3d at 1101, 1105 (the Court considers the existence of outstanding issues *before* considering whether to credit a claimant's testimony or a medical opinion as a matter of law); *accord Leon*, 2017 U.S. App. LEXIS 22330 at *6.

Finally, even with satisfaction of the three requirements, the Court retains "'flexibility'" in determining the proper remedy. *Brown-Hunter*, 806 F.3d at 495 (quoting *Garrison*, 759 F.3d at 1021). The Court may remand for further proceedings "'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id*. As stated by the Ninth Circuit:

> The touchstone for an award of benefits is the existence of a disability, not the agency's legal error. To condition an award of benefits only on the existence of legal error by the ALJ would in many cases make "disability benefits . . . available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."

*Id.* at 495 (quoted sources omitted). *Accord Strauss v. Comm'r of Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.") If the record is "uncertain and ambiguous," the matter is properly remanded for further proceedings. *Treichler*,

---

[3] Although not applicable to the ALJ's March 6, 2017 decision, the SSA revised its regulations regarding the consideration of medical opinions with the intent "to make it clear that it is never appropriate under our rules to 'credit-as-true' any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 at 5858-60 (January 18, 2017) (regulation changes effective March 27, 2017). The SSA further clarified that the "credit-as-true rule" is "inconsistent with the general rule that, when a court finds an error in an administrative agency's decision, the proper course of action in all but rare instances is to remand the case to the agency for further proceedings." *Id*.

ORDER
PAGE - 11

775 F.3d at 1105.

The ALJ erred in construing the medical evidence of record and failed to provide legally sufficient reasons for rejecting plaintiff's testimony and medical opinions of three treating doctors and an examining psychologist. The record has been fully developed, there are no outstanding issues requiring resolution, and further proceedings would serve no useful purpose. As plaintiff observes, the Commissioner does not indicate what specific new evidence needs to be or should be obtained, and suggests the ALJ obtain evidence from a medical expert without explaining why the existing medical records and opinions are inadequate. The Court concludes that, considering the existing medical records and opinions, the ALJ would be required to find plaintiff disabled on remand.

The Commissioner argues the record as a whole leaves serious doubt as to whether plaintiff is disabled. The Commissioner contrasts plaintiff's testimony she could not work because of chronic nausea, pain, anxiety, migraines, and numbness with (1) recent mental status examinations (MSE) not revealing significant mental limitations; (2) plaintiff's January 2016 report her nausea had completely resolved and she was eating normally; and (3) plaintiff's May 2013 report of engaging in activities such as attending sporting events with her daughter, going hiking, and taking her children to the park and horse riding lessons. (Dkt. 20 at 4-5 (citations to record omitted).) The Commissioner argues the MSEs, treatment notes, reviewing doctors' opinions, and plaintiff's activities provide serious doubt as to whether plaintiff is disabled and warrant remand for further proceedings. The Court disagrees.

Plaintiff's disability claim rests primarily on the symptoms associated with her brainstem tumor, not mental impairments. Moreover, despite normal MSE results, it remains that an examining psychologist identified cognitive impairment. The January 2016 report as to nausea,

considered in conjunction with the entirety of the medical record and opinion evidence, does not suffice to create serious doubt.  Also, while the activities identified by the Commissioner do suggest engagement in a range of normal activities, they are not necessarily inconsistent with the symptoms described by plaintiff and her providers.  The evidence reflects plaintiff's ability to function for periods of time, interspersed with periods of significant limitations in functioning due to sustained nausea, vomiting, headaches, and other symptoms associated with her brainstem tumor.  The Court, for this reason and for all of the reasons stated above, concludes this matter is properly remanded for an award of benefits.[4]

## **CONCLUSION**

For the reasons set forth above, this matter is REMANDED for an award of benefits.

DATED this 4th day of June, 2018.

Mary Alice Theiler
United States Magistrate Judge

---

[4] The Commissioner also states that, because this matter involves a claim for SSI and plaintiff's DLI is December 31, 2017, about nine months after the ALJ's decision, the Court should remand for further development of the record, a de novo hearing, and a new decision. The Commissioner presumably intended to tie the DLI to plaintiff's DIB claim. The Court, in any event, finds no need for further proceedings in light of plaintiff's DLI and finds the record sufficiently developed to demonstrate plaintiff's entitlement to both SSI and DIB. Also, plaintiff's assertion as to the possibility of a Continuing Disability Review is a matter properly left to the consideration of the Commissioner.

ORDER
PAGE - 13